**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LINDA SANTIAGO, individually and as mother of MIGUEL SANTIAGO | ) ) ) | |
| | ) | No. 04 C 7677 |
| Plaintiff, | ) ) | |
| | ) | JUDGE PALLMEYER |
| v. | ) | MAGISTRATE JUDGE NOLAN |
| | ) | |
| OFFICER JESSIE RODRIGUEZ, UNKNOWN OFFICERS and the CITY OF CHICAGO, | ) ) | |
| | ) | |
| | ) | |
| MARISELLA ESCOBAR on behalf of JOSE ESCOBAR, a minor, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO.  04 C 7678 |
| | ) | |
| OFFICER JESSIE RODRIGUEZ, UNKNOWN OFFICERS and the CITY OF CHICAGO, | ) ) ) | |
| | ) | |
| | ) | JUDGE PALLMEYER |
| | ) | MAGISTRATE JUDGE NOLAN |
| | ) | |
| Defendants. | ) | |

<u>**MOTION FOR PROTECTIVE ORDER**</u>

Defendants, Chicago Police Sergeant Daniel O'Donnell and Chicago Police

Officers Jessie Rodriguez, Juan Chavez, Todd Johnson and David Seiber ("Officers"),

by their attorney, Geri Lynn Yanow, Assistant Corporation Counsel of the City of

Chicago, pursuant to Rule 26 ( c) of the Federal Rules of Civil Procedure respectfully

request this Honorable Court (1) conduct an *in camera* inspection of documents

requested pursuant to this Court's Order of September 22, 2005; (2) deny plaintiff's

request for these documents; and (3) bar plaintiff from using any of the requested

documents in the trial of this matter.  In support of this motion, the individual defendants

state as follows:

**I.	Production of Documents**

On October 21, 2005, the undersigned provided plaintiff's counsel with

Complaint Register Files for each individual defendant which were produced by the

Chicago Police Department as ordered by this Court.[1]   After reviewing these

documents, plaintiff's counsel requested production of only the files pertaining to Officer

Jesse Rodriguez (12 CR files) before Officer Rodriguez' deposition on October 25,

2005.  The undersigned objected to producing any files since they contain material

which is not relevant to this lawsuit.  This Court's order stated that after the "attorney's

eyes only" review, any document which was requested and objected to should be

submitted for an *in camera inspection*.   The documents were reviewed and 12 files

were requested on Friday, October, 21, 2005.   Officer Rodriguez' deposition was

scheduled for the following Monday, October 25, 2005.   In order to avoid delaying

discovery, and without waiving any objections to this production, the undersigned

agreed to produce the 12 files before the deposition with the agreement that they would

be "for attorney's eyes only" and that no notes would be taken as ordered by this Court.

As agreed to by the parties, those documents were hand-delivered to plaintiff's counsel

one hour before the deposition.

Before the deposition began, the undersigned restated for the record the original

---

[1] The Order of September 22, 2005 allowed plaintiff's counsel an "attorney's eyes only", "no note taking" review of the total documents requested and an *in camera* review by the Court of any documents specifically requested and not agreed to by both parties.

objection to production of these documents. That statement reflected that the
objection was based on all grounds stated in their original objection, that by producing
the requested documents the undersigned was no waiving any objection and that the
objection to producing the documents would be argued at a later time, if appropriate.
Since one of the CR files concerned an incident between Officer Rodriguez and
plaintiffs Linda and Miguel Santiago (CR# 301505) which had occurred 4 days prior to
the incident at issue, this document was produced as relevant and is not part of this
motion.

During the deposition, plaintiff's counsel used the CR files to question Officer
Rodriguez in depth concerning each incident. Counsel, in fact, read from the files as he
questioned Officer Rodriguez. As will be discussed below, an *in camera* review of
these requested 11 documents will reveal that they contain nothing relevant with
respect to this lawsuit. However, during the deposition, plaintiff's counsel again asked
for these CR files and stated for the record, that he intends to call every complainant for
each of the 11 Complaint Register File requested, as a witness to testify in this lawsuit.
At the end of plaintiffs Marisella Escobar and Jose Escobar's deposition on November
9, 2005, counsel again requested the 11 C.R. files and stated that plaintiffs would call
various complainants and witnesses listed in those C.R. files to testify in this matter.
The undersigned believes that this unnecessarily expands an otherwise uncomplicated
matter.[2]

---

[2] At the end of this matter, should plaintiff seek attorney's fees, the undersigned will
argue that any fees for arguing this motion or reviewing these documents should be minimal at
best. Both counsel for the individual defendants and the City of Chicago have agreed that this
matter should be considered for early settlement, before excessive fees and costs are incurred.
In fact, this matter has come before Magistrate Judge Nolan for that purpose. Plaintiffs'

## II.    Claim against City

Although the undersigned does not represent the City of Chicago in this action, it seems clear that the City will be filing a motion for summary judgment which, if successful, would eliminate it as a party here.   A review of the particulars of this case reveal that this matter concerns a towed car, an arrest and guilty plea for driving without proper identification, registration or insurance[3]  and an arrest for threatening the tow truck driver.[4]   Linda Santiago and a minor, Jose Escobar, claimed that they received, respectively, a bump on the head and a black eye during this incident.

Interestingly, plaintiffs also allege a policy and practice that the City fails to properly investigate claims of excessive force (*see* pltfs 2nd amended complaint, ¶¶ 19, 20).  This allegation seems contrary to plaintiffs' own actions.  The C.R. complaint made by Linda Santiago and Marisella Escobar on the date of the incident, alleges that Officer Rodriguez struck Santiago in the forehead and falsely arrested her son, Miguel, and that an unknown officer pushed Jose Escobar.

This complaint was initiated by one of the accused officers, Sgt. O'Donnell.[5]   The

---

counsel insist that this case warrants "City Counsel limit" which is in excess of $100,000.00 and has not been willing to entertain settlement discussions.  This lawsuit does not warrant excessive fees and, as argued below, the undersigned believes that this request has little if any legal merit.

[3]   The arrestee, Omar Campo aka Eduardo Lopez aka Omar Lopez is not a party to this action.

[4]   Miguel Santiago was arrested for this offense.

[5]   All plaintiffs have testified that the officer in the white shirt (O'Donnell) arrived after the incident and was not involved in the allegations of excessive force or in Miguel Santiago's arrest.  If Sgt. O'Donnell is not dismissed from this matter, a motion for summary judgment will be filed on his behalf.

investigation was terminated after repeated attempts to contact plaintiffs and their attorney failed. Linda Santiago (on behalf of herself and her son, Miguel), Marisella Escobar (on behalf of her son, Jose Escobar), as well as their attorney, ignored repeated attempts by the investigator to secure their cooperation in investigating their complaint. *See* C.R. # 301623 which has been produced but will be included in the *in camera* inspection.

## III.    CR Files

When the Officers objected to producing any CR files, they did so for a variety of reasons. First, the documents are highly personal, confidential, irrelevant, immaterial and are not likely to lead to discovery of any admissible evidence. They contain a wide variety of information, including medical information about third-parties who are not involved in this matter. Interestingly, none of the complaints against any individual Officer were sustained, many were unfounded or exonerated, and in fact, Officer Rodriguez only received discipline, consisting of several days, for having a number of "fender/bender" accidents while driving his squad car. No one was injured during those accidents.

Many of the 11 specific C.R. files requested allege that Officer Rodriguez used obscene language. Plaintiff's counsel spent considerable time during the deposition questioning Officer Rodriguez about these incidents and his use of obscene language. These questions rapidly became harassing and provoking, and totally irrelevant to this proceeding. In fact, in the other complaint alleged by Ms. Santiago (CR# 301505) she alleged that Officer Rodriguez used obscene language and threatened arrest.

Four days before the incident at issue, on October 24, 2005, Ms. Santiago had

5

been visited by Officer Rodriguez and his partner because neighbors had called police to complain about a loud party outside her residence at around 11: 45 p.m.   That CR file was produced to plaintiff's counsel (C.R. #301505).[6]    No arrests were made on October 24, 2005,  since the DJ (Santiago's eldest son) turned off the music which was blaring from speakers outside in the front yard and the music was off when Officer Rodriguez and his partner left the Santiago home.

With respect to that complaint (#CR 301505), Officer Rodriguez testified at his deposition that Ms. Santiago and her son Miguel were yelling at the Officers, telling them they were trespassing, and insisting that they did not have to turn the music down or off.   Officer Rodriguez then told them that if another complaint was made concerning noise, they would be arrested since they had been told previously about the complaints of noise from neighbors.  Yet again, Linda Santiago refused to cooperate in this investigation of her complaint and the investigator found that "[t]he complaint should be UNFOUNDED."   As with all the other CR files, calling anyone to testify about another CR complaint or another incident will necessitate "trials within trials" to deal with the circumstances of each incident, complicating and expanding this lawsuit.

## IV.  Obscene language is not actionable

A claim of use of obscene language or even verbal abuse is not well founded and the law is, and has been, clear.  Moreover, this allegation does not appear in any of plaintiffs' complaints.  *See* pltfs original, 1st amended and 2nd amended complaints. Any discovery concerning this issue needlessly complicates this lawsuit, incurs

---

[6]  This file will also be included in the *in camera* inspection.

additional time, burden and cost to the defendants, expands fees for both parties, and is not relevant to plaintiffs' claims.

As plaintiffs' counsel is aware, neither verbal harassment or abusive language are actionable under 42 U.S.C. § 1983. *See Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987)(neither derogatory racial epithets nor defamatory comments constitute a deprivation of liberty actionable under the due process clause); *Slagel v. Shell Oil Refinery*, 811 F. Supp. 378, 382 (C.D.Ill.1983) ("[C]itizens do not have a constitutional right to courteous treatment by the police. Verbal harassment and abusive language while 'unprofessional and inexcusable,' are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983.") *Id. See also Young v. Newton*, 82 C 4327, 1985 WL 2405, *2 (N.D. Ill. June 28, 1985).

As was proved during Officer Rodriguez' deposition, plaintiffs' use of these 11 CR files was oppressive, harassing and unreasonable. The documents do not bear on the incident at issue or the conduct at issue of either Officer Rodriguez, Sgt. O'Donnell, Officer Johnson, Officer Chavez or Officer Seiber.[7] Any use of these complaints in this matter will necessitate further depositions of each of these so-called "witnesses" which will incur further needless costs and fees. Undoubtedly, these allegations will only serve to confuse the issues of whether any officer used excessive force and whether any officer failed to stop another from using excessive force.

**V.    Excessive Force allegations**

With respect to the two requested CR files which allege excessive force, neither

---

[7]    Furthermore, no plaintiff could identify, describe, or name, any officer other than Officer Rodriguez as the person(s) who had allegedly committed any constitutional violation.

is relevant here. In one, Officer Rodriguez was accused of pushing a 7 year old boy "'aside when attempting to remove the food from [an illegal vendor's] cart" (Unfounded); and (2) Officer Rodriguez was accused of grabbing an offender from "behind and excessively bent him forward, causing him to bang his face on the hood of the squad car" (Not Sustained). Neither of these allegations is relevant to the claims here.

On the date of the incident at issue here, October 28, 2004, Linda Santiago filed a CR claim against Officer Jesse Rodriguez claiming that Officer Rodriguez struck her on the forehead during the arrest of her son. She made no claim that any force was used against her son Miguel, only that he had been arrested for no reason. (CR# 301623). At that time, neither Linda or her son Miguel alleged that Miguel was thrown to the ground and accosted by "Defendant Officers." *See* pltfs original, 1st amended and 2nd amended complaint. Marisella Escobar also alleged in the CR complaint that "an unknown officer pushed her son". Jose Escobar, who was not arrested, could not give a description of the officer who had pushed him. At that time, neither Marisella nor Jose claimed that he was struck in the eye by any officer.

To bolster their claims of false arrest and excessive force, plaintiffs now wish to use 11 CR files to improperly suggest that since some citizens claimed that they were falsely arrested, verbally abused, pushed or struck by Officer Rodriguez, then their allegations of excessive force and false arrest must be true. These files show that citizens made complaints to the police department about Officer Rodriguez, and the Office of Professional Standards ("OPS") conducted investigations. Office Rodriguez was found to have had several "fender/bender" accidents which did not result in any injuries and he received a suspension of several days. Even if OPS had found that

8

Officer Rodriguez had violated other department rules, these findings would also be irrelevant to the matter at hand, since rule violations are also not actionable.

Violations of state statutes, local ordinances and administrative or department regulations do not give rise to an action under § 1983, unless the rights are guaranteed under the United States Constitution. *See Davis v. Scherer*, 468 U.S. 183, 194 (1984); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir. 1988); *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1349 (7th Cir. 1985). Furthermore, courts look to federal law, not state or municipal regulations, to determine the existence and scope of personal liberties protected by the due process clause of the Fourteenth Amendment and the "reasonableness" standard under the Fourth Amendment. *Archie v. City of Racine*, 847 F.2d 1211, 1215-18 (7th Cir. 1988) (*en banc*); *see also Graham v. Connor*, 490 U.S. 386 (1989). Therefore, whether Officer Rodriguez, or any of the named Officers here violated Chicago Police Department general orders or procedure is irrelevant to plaintiffs' § 1983 or state law claims.

## VI.    C.R. files are not relevant

It seems obvious that these confidential documents which contain information related to other complaints, appear to be sought solely as a means to discover impeaching material to discredit the general credibility of Officer Rodriguez and the other named officers. These documents are often requested in criminal matters by criminal defendants hoping to bolster their defense. In *United States v. Andrus*, 775 F.2d 825 (7th Cir. 1985), the Seventh Circuit affirmed the decision of the trial court, which denied a criminal defendant access to police officers' personnel files pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). In *Andrus*, the defendant had

9

argued that the personnel files "fell within the class of materials *Brady* requires the government to produce." 775 F.2d at 843. The court in *Andrus* explained that speculative assertions that impeaching material *may* be in a government file do not warrant disclosure of the file or production of the file for the court's inspection. 775 F.2d 825, 843 (7th Cir. 1985) (citing *United States v. Navarro,* 737 F.2d 625, 631 (7th Cir.), *cert. denied*, 469 U.S. 1020, 105 S. Ct. 438 (1984) ("[a] due process standard which is satisfied by mere speculation would convert *Brady* into a discovery device and impose an undue burden upon the district court.")).

Plaintiffs' insistence on production of these documents is nothing more than a desire for an unrestrained foray into confidential governmental records in the hope of unearthing some unspecified information that will enable plaintiffs to impeach and smear the officers. Yet the officers do not stand indicted, arrested, criminally charged or even convicted of any bad act. *See Knowles v. Panopoulos*, 66 Ill. 2d 585, 590-91, 363 N.E.2d 805, 808 (1977) (only a witness' conviction "may be allowed to impeach and not an arrest, indictment, charge or actual commission."). Plaintiffs cannot even argue that aside from the "fender/bender" file, Officer Rodriguez or any named Officers received any disciplinary action concerning their conduct.

Plaintiffs allegations that the Police Department does not investigate complaints of excessive force is belied by these requested documents which indicate that these citizen allegations were investigated. Furthermore, since neither counsel nor plaintiffs cooperated with the investigation of their own complaints, they should not be allowed to expand discovery and this lawsuit by seeking to admit testimony of those citizens who did cooperate.

10

Since any information obtained from these investigatory records may not be used for impeachment or any other purpose, plaintiffs cannot meet their burden to show that the documents are evidentiary or relevant. The 11 C.R. files demanded, by their very nature, contain no evidence or information likely to lead to evidence with respect to the allegations alleged here. As such, said documents are irrelevant, immaterial and inadmissible in the instant case.

**WHEREFORE,** Chicago Police Sergeant Daniel O'Donnell and Chicago Police Officers Jessie Rodriguez, Juan Chavez, Todd Johnson and David Seiber respectfully request that this Honorable Court conduct an *in camera* inspection of the 11 requested C.R. files and further that this Court bar plaintiff from use of these files in the case at issue.

Respectfully submitted,

/S/ GERI LYNN YANOW
GERI LYNN YANOW
Assistant Corporation Counsel

30 N LaSalle Street / Suite 1400
Chicago, Illinois 60602
(312) 744-2837
(312) 744-6566 (FAX)
ATTY. NO. 06198618

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have caused true and correct copies of the above and foregoing **MOTION FOR PROTECTIVE ORDER** to be electronically delivered to the person named in the foregoing Notice at the address therein shown, on this 10th day of November, 2005.

/S/ GERI LYNN YANOW
GERI LYNN YANOW